that of principal and agent. Such testimony, however, is not conclusive of the question. After the oral contract was made, which furnished authority for the performance of the work aside from the plumbing, the defendant's testator wrote the plaintiffs a letter, in which he states: "As I now understand our contract, your firm is to settle all bills for work done under your direction, first, however, submitting them to me for approval, and I am to pay you." This expressed his understanding of what the contract was, and the plaintiffs by acting thereunder adopted such understanding. The letter itself is somewhat ambiguous, and may be subject to either construction. The acts of the parties thereunder become of controlling importance in its true interpretation. It appears that the plaintiffs evidently construed the contract as authorizing them to deal, independently of defendant's testator, with the persons whom they employed to do the work. They contracted with such persons in their own name, and assumed to be responsible for their compensation, and the contractors thus employed dealt with the plaintiffs as the principals in the transaction, and no one of them at any time looked to the defendant's testator as being liable for his bill, or had any negotiations with him whatever, until after the work was completed. The defendant's testator had notice of all of these facts, and, so far as appears, approved of all that was done in this connection. We think, therefore, that the referee was justified in finding that the relation was not that of principal and agent, but of employer and contractor. These conclusions lead us to hold that upon the main question the plaintiffs were entitled to recover.

So far as the rulings made upon the trial are concerned, they are all proper, in view of the disposition which is made of the main contentions involved. We find no legal error therein.

The amounts which were charged for the work were the subject of contest, but this question was one of fact for the disposition of the referee, and we find that he legally disposed thereof.

It follows that the judgment should be affirmed. All concur.

---

BURROUGHS v. STRAUS et al.

(Supreme Court, Appellate Division, Second Department. March 6, 1900.)

1. ACCOUNT STATED—SUFFICIENCY OF EVIDENCE—PAYMENT.

In an action on an account for sales of lumber, plaintiff's statement of account omitted set-offs to which defendant was entitled. It was shown that at the termination of the dealings between the parties an adjustment was had, and the balance found due was paid. Shortly afterwards an account was presented defendant, which he corrected and returned, and the corrections were entered upon plaintiff's books. These corrections demonstrated the correctness of the account as previously settled, except an amount because of cargoes consigned to defendant, which was still outstanding. The books were closed within two weeks of the last-named account, and the balance representing the amount of the consigned cargoes was carried to the new ledger. *Held* sufficient to show settlement and payment of the account.

2. WITNESSES—IMPEACHMENT.
    Evidence that one has been indicted for forgery is not competent to
    discredit his testimony.
3. APPEAL AND ERROR—ADMISSION OF ERRONEOUS EVIDENCE BEFORE REFEREE.
    The erroneous admission of evidence tending to discredit a witness be-
    fore a referee is not ground for reversal, in the absence of a showing that
    such evidence had a prejudicial effect on the referee.

Appeal from special term, Kings county.

Action by Horace P. Burroughs against Adolph D. Straus, Edward
F. Eberstadt, and Walter Dormitzer. Judgment for defendants, on
report of referee, dismissing complaint, and plaintiff appeals. Af-
firmed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH,
WOODWARD, and HIRSCHBERG, JJ.

James M. Hunt, for appellant.
Charles E. Rushmore, for respondents.

HIRSCHBERG, J. The plaintiff sues to recover an alleged bal-
ance due of $5,311.08 on sales of lumber by his son, Horace F. Bur-
roughs, Jr., to the defendants, during the years 1887 to 1891, in-
clusive; the claim being assigned to him. The defense, so far as is
material to the appeal, is payment by the defendants to the plain-
tiff's assignor before the assignment; but at the close of the case
the referee permitted an amendment to the answer to conform to
the proof, alleging that before such assignment the defendants and
plaintiff's assignor had mutually settled and adjusted their accounts.

The appellant asks the court to make a thorough examination of
the evidence showing the fact of settlement and payment, and such
examination has been made. The usual course of dealings between
Burroughs, Jr., and the defendants, was for the former to deliver
the lumber on shipboard as directed by the latter each sale, and to
send to the defendants an invoice with each shipping receipt, and
thereupon the bill would become due and payable, with an agreed
discount if paid within a time also agreed upon. The defendants
made the payments from time to time, sometimes paying invoices
in full specifically, sometimes making general payments on account,
and occasionally demanding and receiving allowances for alleged
shortages and deficiencies in prior shipments. Some claims were
made which were not allowed at the time, but were held in abey-
ance until the accounts between the defendants and Burroughs, Jr.,
were finally settled, adjusted, and balanced on the 14th day of May,
1891. It appears that neither Burroughs, Jr., nor the defendants,
kept accurate accounts of the sales of lumber. On the trial the
plaintiff put in evidence an account made up from the press copy
book of invoices kept by Burroughs, Jr., showing something like 250
sales or shipments to or for the defendants during the years covered
by the dealings, commencing with an invoice of January 6, 1887,
and ending on May 15, 1891, amounting to the sum of $187,185.06.
As against this total were credited various payments of cash, which
Burroughs, Jr., testified was all he had received from the defend-

ants, and which amounted to the sum of $181,873.98; leaving the difference, $5,311.08, the amount sued for. This account, together with the invoices and receipts, constitutes substantially the proof supporting the plaintiff's claim to recover the balance alleged to be due and owing. The general rule on the part of the defendants appears to have been to settle the accounts weekly, or within 10 days; and it was admitted by Burroughs, Jr., that in quite a number of instances the defendants informed him that they were obliged to make allowances to their West Indian correspondents, and that he made those allowances good. He did so by permitting the defendants to keep the necessary sum of money out of their settlements with him. In the account above referred to, and which is the chief exhibit or basis of the plaintiff's claim, none of these allowances is credited. He admitted that his ledger contained entries of some of these amounts so kept out or deducted, but testified that he did not know whether it contained them all. That the account so put in evidence by the plaintiff to establish his claim was not an account made up so as to honestly and accurately reflect or convey the dealings between his assignor and the defendants was, therefore, practically conceded. The extent of the deviation appears, for example, at about the end of the first year's dealings, when, on the 16th of February, 1888, Burroughs, Jr., gave the defendants a receipt for $3,503.28 "in full of a/c to date." The account in evidence, however, at that date, and after crediting that payment, shows a debit balance of $1,425.19; and it may be said in a general way that about the same proportion in excess of credits runs through the account to its termination. On the part of the defendants testimony was given tending to show that the shipments of lumber were not all sales by Burroughs, Jr., to the defendants, but that three cargoes in the spring of 1891, viz. those shipped by the vessels Hiawatha, Teneriffe, and J. F. Merry, respectively, were consignments on Burroughs' account. The defendants further proved by satisfactory evidence that on the 2d day of March, 1891, after several hours of negotiation with Burroughs, Jr., the amount of the existing and unsettled claims on the part of the defendants for shortage, overcharges, losses, etc., was mutually adjusted at the sum of $1,-775.94, and that a statement in writing of the items was made up and delivered to Burroughs, Jr.; a copy being in evidence. They further proved by equally satisfactory evidence that on or about the 13th day of May, 1891, an account was made up of the unsettled dealings between the parties at that date, exclusive of the consigned cargoes, and that this account, after deducting the allowances of $1,775.94, left a balance due to Burroughs, Jr., of $1,005.85, which balance, together with an item of $10 also owing to Burroughs, Jr., was paid to him by defendants' check for $1,015.85 on May 15, 1891. This account runs only from October 26, 1889, to the date of settlement, and a copy is in evidence. It is to be noted, in this connection, that the lumber yard of Burroughs, Jr., was destroyed by fire on May 6, 1891, and that the last shipment noted on the plaintiff's account on which the claim for a balance due is made is of a sale under date of May 15, 1891.

It may be regarded, therefore, as conceded that the dealings ended with this adjustment and payment of the balance due.. Burroughs, Jr., denied these adjustments and settlements. He died during one of the adjournments of the trial before the referee. After his death, and as evidence that the accounts between the parties were open and unsettled after May, 1891, the plaintiff offered in evidence an account dated June 12, 1891, made out against the defendants, and in favor of Burroughs, Jr., showing an apparent balance due of $4,171.87. This exhibit contains corrections in pencil and in red ink, in the handwriting of defendants' bookkeeper, and to my mind very strongly corroborates the defendants' claim. The inference, on its face, and from its production by the plaintiff, is that it was sent by Burroughs, Jr., to the defendants, and by them returned with their corrections to him, and then retained by him as corrected and as satisfactory. The corrections referred to are two charges, amounting to $570.78, which were paid by check in January, 1890, and a charge for $824.93, which was omitted; the difference being $254.15, to be added to the debits. On the other side is an omission of a payment, January 6, 1891, of $1,000, and (not noted, but apparent) an omission of $10 in the check given for settlement on May 15, 1891. The difference between the $1,010 of omitted credits, and the $254.15 of omitted charges, viz. $755.85, reduces the balance shown on the exhibit of $4,171.87 to the sum of $3,416.02. But this exhibit contains the consignments and the advancements on account of them, the difference amounting to $1,640.38. Deducting this item from the last-named balance, viz. $3,416.02, leaves the sum of $1,775.64, as the real balance presented by the exhibit in question, or within 30 cents of the amount ($1,775.94) at which the defendants claimed their allowances were adjusted on the 2d day of March, 1891. On the 26th day of June, 1891, the ledger account of Burroughs, Jr., against the defendants was closed, and the consignment balance above shown, viz. $1,640.38, together with a disputed item of $4, which the defendants claim has been paid, was carried to his new ledger; thus leaving nothing open in his ledger account against the defendants, except a charge for $1,644.38, for the $4 item and the three cargoes claimed to have been consigned. This balance fully establishes the truth of the defendants' claim that the three cargoes in question were consignments, and not absolute sales; but the defendants also put in evidence an assignment from Burroughs, Jr., to the plaintiff, dated September 16, 1891, purporting to assign all claims against the defendants, which assignment is in the handwriting of the bookkeeper of Burroughs, Jr., and in which the cargoes of the Hiawatha, the Teneriffe, and the J. F. Merry are each marked "Consignment."

The referee found that the parties arrived at a settlement and adjustment of their accounts on May 13, 1891, and that the amount then found due to the plaintiff's assignor was fully paid. From the extended statement herein made of the nature of the proof on that question, it must be apparent that any other finding would have been against the weight of evidence. He also found that the advances on the consigned cargoes largely exceeded the final re-

ceipts, and that fact is not contested on this appeal.   The case, there-
fore, presents this state of facts:   The plaintiff produced a state-
ment exhibiting alleged sales on the one side and payments on the
other, which statement, however, was discredited by the admission
that there were offsets to which the defendants were entitled, but
which were not credited.   The balance shown by this incomplete
account was $5,311.08, the amount sued for..   The defendants proved
that, at about the time of the termination of the dealings between
the parties, an adjustment and settlement of their accounts was had,
by which the sum of $1,775.94 was deducted or allowed to them by
mutual consent, and that the balance then remaining was paid in
full.   Shortly after this payment was made, an account was pre-
sented on behalf of plaintiff, which was immediately corrected by
the defendants and returned, and which, as so corrected and re-
turned, was not only retained on plaintiff's behalf, but the books
of the plaintiff's assignor were at once corrected and arranged to
correspond therewith.   These corrections demonstrated that the de-
fendants had paid everything beyond the $1,775.94 of agreed deduc-
tions, excepting that the sum of $1,640.38 was still outstanding by
reason of certain consigned cargoes; and the account of defendants
was closed on the books of the plaintiff's assignor within two weeks
of the date of the last-named account, and the balance representing
the consigned cargoes alone was then carried to a new ledger as the
only open and unsettled account between the parties.   It would seem
that the referee was compellable, on this state of facts, to conclude
that the parties had arrived at an amicable and satisfactory adjust-
ment of their dealings by way of sale and payment, and that the
amount found due had been fully paid.   The amendment to the an-
swer was unnecessary.   The complaint claims a balance due, and
as against such a complaint the defendants would have been entitled
to show payment under a general denial.   Quin v. Lloyd, 41 N. Y.
349.   But the answer alleges payment as an affirmative defense, and
the defendants were entitled, without any amendment of the an-
swer, to show the actual balance and its payment in full.

It remains only to consider the rulings on the admission and re-
jection of evidence.   None of them deserves serious consideration,
excepting the allowance of the question to Burroughs, Jr., on cross-
examination, as to whether he was under indictment for forgery.
It was clearly not competent to discredit him by showing that he
had been indicted.   Van Bokkelen v. Berdell, 130 N. Y. 141, 29 N.
E. 254.   There is nothing in the record, however, nor in the cir-
cumstance, to indicate that the answer of the witness, which was
exculpatory in its nature, had any prejudicial effect upon the learned
referee.   Had the trial been before a jury, a different disposition of
the case on appeal might well be required; but, under the circum-
stances of this case, the fact that its decision rested upon an adop-
tion of the books and documents of the witness sought to be discred-
ited, the fact that he (the chief witness of the plaintiff) has since
died, and that therefore the claim must depend upon the case as
now made up, and the absence of any indication that the decision

was in any. way affected by the improper evidence, the judgment should not be disturbed.

I recommend affirmance.

Judgment affirmed, with costs. All concur.